

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 24, 2007**                                             **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TAMMY CAROL WAGGONER, | § | CASE NO. 05-21523-RLJ-7 |
| | § | |
| Debtor | § | |

_____

| | | |
|---|---|---|
| TAMMY CAROL WAGGONER a/k/a | § | |
| TAMMY CAROL PERKINS, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADVERSARY NO. 07-2010 |
| | § | |
| UNITED STATES OF AMERICA through | § | |
| its subagency, the INTERNAL REVENUE | § | |
| SERVICE, | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OPINION**

The Court considers the motion of the Internal Revenue Service ("IRS"), defendant in

this adversary, requesting that the Court vacate the default entered by the Clerk of the Court

against the IRS on August 7, 2007.  Plaintiff (and debtor in this bankruptcy case), Tammy Carol Waggoner ("Waggoner"), opposes the motion and submits for consideration her motion for default judgment.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(b) and 157(a); this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Memorandum Opinion contains the Court's findings of fact and conclusions of law.  Bankruptcy Rule 7052.

## Facts

Waggoner filed this suit on June 19, 2007.  On June 21, 2007, summons and notice of trial was issued by the Court Clerk.  The summons was served by certified mail on the Internal Revenue Service, Office of Chief Counsel, in Washington, D.C., the Civil Process Clerk, c/o the United States Attorney's Office in Amarillo, Texas, and the Attorney General of the United States, c/o the Department of Justice in Washington, D.C.  In accordance with the summons, the IRS was required, assuming service was proper, to file its answer within 35 days after issuance of the summons.  Therefore, the deadline to file an answer was July 26, 2007.  The IRS did not file an answer or otherwise respond by the July 26 deadline.  On July 30, 2007, Waggoner filed her request for entry of default under Federal Rule of Bankruptcy Procedure 7055(a).  On August 2, 2007, the Clerk entered the default of the IRS.  On August 3, 2007, the IRS, upon receiving electronic notice of the entry of default, filed its motion to set aside the default and, in addition, its answer to Waggoner's complaint.  On the same day, August 3, 2007, Waggoner filed her motion for a default judgment.

## Discussion

The IRS contends that the Clerk's entry of default should be set aside because (1) service

on the IRS through the Office of General Counsel in Washington, D.C. was improper, and (2) good cause exists under Federal Rule of Civil Procedure 55(c) to warrant vacation of the default. On the first point, the IRS submits that the summons and complaint should have been mailed to the following address:

> Internal Revenue Service
> Special Procedures - Insolvency
> P.O. Box 21126
> Philadelphia, PA. 19114

The Philadelphia address is the designated address for notice to the IRS of bankruptcy cases and matters arising within bankruptcy cases in which the IRS is a creditor. Appendix G of the Northern District of Texas Local Rules contains the Philadelphia address as the "frequently used address" of the IRS.

Rule 4(i) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7004(a), governs service on the IRS. The rule states as follows:

> Service on an agency or corporation of the United States ... is effected by serving the United States in the manner prescribed by Rule 4(i)(1) and by also sending a copy of the summons and complaint by registered or certified mail to the officer, employee, agency, or corporation.

Fed. R. Civ. P., 4(i)(2). Rule 4(i)(1), which is referenced by 4(i)(2), provides that service upon the United States shall be effected by delivering a copy of the summons and the complaint "(A) … to the United States attorney for the district in which the action is brought … (B) … to the Attorney General of the United States at Washington, District of Columbia...." Fed. R. Civ. P., 4(i)(1). Thus, to properly serve a federal agency, one must deliver a copy of the summons and complaint to three parties: (1) the Attorney General of the United States, (2) the United States attorney for

- 3 -

the district in which the action is brought, and (3) the agency.[1]

Federal Bankruptcy Rule of Procedure 5003 directs the clerk of court to maintain a register of addresses provided by the United States agencies, departments, and instrumentalities and states that "[t]he mailing address in the register is conclusively presumed to be a proper address for the governmental unit, but the failure to use that mailing address does not invalidate any notice that is otherwise effective under applicable law." Fed. R. Bank. P. 5003.

The IRS does not contend that the Office of Chief Counsel for the IRS in Washington, D.C. did *not* receive the summons and complaint. As a result, the Court is of the opinion that service was proper. In reaching this conclusion, the Court recognizes, however, that an attempt to coordinate or reconcile Rule 4 (both Federal Rule 4 and Bankruptcy Rule 7004) with Bankruptcy Rule 5003 and the Court's Local Rules potentially creates confusion. Rule 5003 and Appendix G to the Northern District Local Rules apply, in the Court's view, to routine notices that go out to creditors in a bankruptcy case and is not relevant to *service* of a lawsuit.

"Notice in bankruptcy proceedings is different from service of process." *In re Boykin*, 246 B.R. 825, 827 (Bankr. E.D. Va. 2000). The Federal Rules of Bankruptcy Procedure set forth different rules governing notice and service of process in bankruptcy proceedings. *See* Fed. R. Bankr. P. 2002 (setting forth rules governing notices to creditors, equity security holders, the United States, and United States Trustee); Fed. R. Bankr. P. 7004 (setting forth rules governing process, service of summons, and complaint).

Whether a party must comply with the notice rules or the service of process rules depends

---

[1] Rule 7004(b) of the Rules of Bankruptcy Procedure provides service that is similar to that set forth at Rule 4(i), except that the Bankruptcy Rule allows such service by first class mail. In the instant case, the summons and complaint were sent by certified mail as directed by Rule 4(i).

on what aspect of the case is involved or what action is being taken. *See*, *e.g.*, Fed. R. Bankr. P. 9014 (requiring that motions in a contested matter "be *served* in the manner provided for service of summons and complaint by Rule 7004") (emphasis added); Fed. R. Bankr. P. 7005 (requiring in part that additional claims for relief against a defaulting party be *served* on the party in the manner provided for service of summons in Rule 4 of the Federal Rules of Civil Procedure, which is made operable in bankruptcy through Fed. R. Bankr. P. 7004); *cf.* Fed. R. Bankr. P. 6004(a) (requiring that *notice* be given of "a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business" pursuant to certain provisions of Rule 2002).

The reason for the distinction between notice and service of process in bankruptcy procedure has been explained in part as follows:

> Bankruptcy proceedings differ significantly from non-bankruptcy civil litigation. Generally speaking, in non-bankruptcy civil litigation, there is a plaintiff and a defendant, or at least a very small number of plaintiffs and defendants. Each can be identified individually. Each defendant is served with the initial complaint which seeks specific relief against the defendants. Bankruptcy, however, affects numerous parties. Sometimes the number of creditors is relatively modest, but the number can be quite significant. The Federal Rules of Bankruptcy Procedure and the Bankruptcy Code were designed to satisfy the due process requirement of adequate notice to parties whose interests may be affected.

*In re Boykin*, 246 B.R. at 827. Since there are many aspects of, and actions in, a bankruptcy case that may affect the administration of the case and the body of creditors generally, but none specifically, the rules require notice that complies with Rule 2002 in those instances. *Id*. at 828. Where an aspect of, or action in, a bankruptcy case affects a specific party's interests, the rules require service of process on the affected party. *See id*.

Rule 5003 of the Bankruptcy Rules provides a method whereby an agency of the United

States, such as the IRS, may register an address at which it wishes to receive *notice* of bankruptcy matters. Fed. R. Bankr. P. 5003. The rule speaks only to notice, not service of process. *Id*.[2] Service is governed by Rule 7004. Fed. R. Bankr. P. 7004.

As Waggoner complied with the applicable rules for service of process by serving the Chief Counsel of the IRS and since she need not serve the IRS at an address that was registered specifically for receiving notice, service was proper.

Despite the Court's conclusion that service was proper, the Court is satisfied, as well, that the IRS meets the "good cause" standard of Rule 55(c) to justify vacation of the default entry.[3] Rule 55 of the Federal Rules of Civil Procedure sets forth the rules governing default. Fed. R. Civ. P. 55. In drafting the rules, the drafters differentiated between default "entry" and default "judgment" by providing separate rules for each concept under the first two subsections of the rule. *See id.* subsections (a) and (b). Subsection (c) then provides: "For **good cause** shown the court may set aside an *entry of default* and, if a *judgment by default* has been entered, may likewise set it aside in accordance with Rule 60(b)." *Id.* (emphasis added). Thus, the standard for setting aside an "entry" of default is "good cause" while a separate standard governing setting aside a "judgment" by default is set forth in Rule 60(b). *Id*.

The standard given for overturning default judgments under Rule 60(b) is stated in the rule as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered

---

[2]The rule specifically references "notice" three times and does not mention "service."

[3]Federal Rule 55 is made applicable by Federal Rule of Bankruptcy Procedure 7055.

evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). The specific grounds for relief mentioned in Rule 60(b) have generally been regarded as included within the concept of "good cause" for purposes of Rule 55(c). *Medunic v. Lederer*, 64 F.R.D. 403, 406 (E.D. Pa. 1974) (reversed on other grounds). It is also generally acknowledged that "good cause" is a broader and more liberal standard than that found in Rule 60(b). *Broder v. Charles Pfizer & Co.*, 54 F.R.D. 583 (S.D.N.Y. 1971) (citing *Secs. and Exch. Comm'n v. Vogel*, 49 F.R.D. 297, 299 n. 2 (S.D.N.Y. 1969)); s*ee Amberg v. Fed. Deposit Ins. Corp.,* 934 F.2d 681, 685 (5th Cir.1991) (stating that good cause requirement of Rule 55(c) has generally been interpreted liberally). Therefore, something less than the specific grounds of "mistake, inadvertence, surprise, or excusable neglect" of Rule 60(b) may be sufficient to overturn an entry of default than would be necessary to set aside a default judgment. *See Broder*, 54 F.R.D. at 583.

The case law recognizes that the good cause determination to be made under Rule 55(c) rests largely in the discretion of the trial judge, although some courts have added that, when in doubt, defaults should be set aside so that cases may be decided on the merits. *United States v. One Urban Lot Located at 1 Street A-1,* 885 F.2d 994, 997 (1st Cir. 1989); *Kulakowich v. A/S Borgestad*, 36 F.R.D. 185 (E.D. Pa. 1964); *Vogel*, 49 F.R.D. at 299 (citing *Alopari v. O'Leary*, 154 F. Supp. 78 (E.D. Pa. 1957)).

Relief is generally afforded when a defaulting party is able to present certain basic

explanations for the inaction which gave rise to the default entry. *McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970); *see Robinson v. Bantam Books, Inc.*, 49 F.R.D. 139, 141 (S.D.N.Y. 1970). Since the rule does not limit the determination to "good cause for inaction," other reasons that have more to do with the efficacy or fairness of opening a default entry may be considered as a matter of equity. *See, e.g., Kulakowich*, 36 F.R.D. at 186 (noting that where no substantial prejudice will result to the plaintiff and where defendants claim the existence and present a factual basis for a meritorious defense, the court will set aside the default).

For instance, whether the defaulting party has shown that he has a meritorious defense has nothing to do with the reason or excuse for defaulting, yet it is considered an important factor in determining whether to overturn a default. *See, e.g., id.*; *see also Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969) (holding that a district court, which refused to set aside a default judgment on petition of defendant who made no suggestion that he had a meritorious defense, did not abuse its discretion). In fact, several courts have held that relief should not be granted in absence of such a showing – presumably on the theory that setting aside a default does not serve the interests of justice if doing so would not affect the outcome of the suit. *McCloskey & Co. v. Eckart*, 164 F.2d 257, 258 (5th Cir. 1947); *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251-52 (4th Cir. 1967). With respect to the amount of proof needed to establish a meritorious defense, conclusory statements that such a defense exists are generally held to be an insufficient showing. *Consol. Masonry & Fireproofing, Inc.*, 383 F.2d at 252.

A similar consideration is whether overturning the default entry will cause prejudice or harm to the nondefaulting party. *Finch v. Big Chief Drilling Co.*, 56 F.R.D. 456, 458 (E.D. Tex.

1972). The absence of such prejudice has been treated as a prerequisite for relief in some cases. *Kingvision Pay-Per-View Ltd. v. Niles*, 150 F. Supp. 2d 188 (D. Me. 2001) (requiring proof that the nondefaulting party will suffer no prejudice if the entry of default is opened); *Trachtman v. T. M. S. Realty & Fin. Servs.,* 393 F. Supp. 1342, 1347 (E.D. Pa. 1975) (listing absence of substantial prejudice on nondefaulting party as an element of a successful action for reopening a default entry). Other cases merely treat it as a factor to be considered with all other factors. *See, e.g., Effjohn Int'l. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003) (naming three nonexclusive factors that are considered in determining good cause *vel non*: (1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented) (citing *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000)); *A. C. Samford, Inc. v. United States*, 226 F. Supp. 72 (D.C. Ga. 1963); *Finch*, 56 F.R.D. at 458.

While Rule 55(c) does not impose any time limitations on taking action to cure a default, the promptness with which curative action is taken is another factor that may be considered in determining whether or not a default entry should be opened. *Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir. 1992).

Finally, in some cases, the amount of money at stake has been a factor in deciding whether to open a default entry. *See, e.g.*, *Johnson v. Harper*, 66 F.R.D. 103 (E.D. Tenn. 1975); *Rooks v. Am. Brass Co.*, 263 F.2d 166 (6th Cir. 1959). Where the sum of money at stake is substantial, cases should be determined on the merits and not by default, especially where default can reasonably be avoided. *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3rd Cir. 1951).

In this case, the IRS acted immediately after the default was entered. There is no indication that the IRS made an affirmative decision not to timely answer or respond. On the other hand, the IRS offers no reason for its failure to timely respond. The Court assumes that the IRS's asserted reliance on being served at its Philadelphia location may have had some bearing on its failure to timely answer. While this is not a satisfactory explanation, it is, at least, an excuse.

Assessing whether the IRS has raised a meritorious defense, the Court considers the nature of the relief sought by Waggoner. By her complaint, Waggoner requests that the Court deny allowance of the IRS's proof of claim that it has filed in her bankruptcy case. The IRS's proof of claim is for $130,010.92, consisting of a secured claim of $24,271.50, an unsecured priority claim of $44,357.02, and an unsecured non-priority claim of $61,382.40. The claim was filed late, *i.e.*, beyond the bar date, but the IRS contends, as with service of the adversary, that notice of the bankruptcy and of any deadlines to file a claim was not properly provided because no such notice was sent to the Philadelphia address.[4]

Waggoner raises four counts that, she contends, justify disallowance of the IRS's claim; three of the four counts are based on her assertion that she is an "innocent spouse" and thus should not be liable along with her former husband for taxes owing for the relevant time periods (tax years 2000 and 2002). She brings her causes under section 505 of the Bankruptcy Code and section 6015 of the Internal Revenue Code. Her fourth count is based on her allegation that the IRS's failure to timely file its proof of claim justifies disallowance of its claim. As stated above,

---

[4] As opposed to the issue of service, the Court is of the opinion that the *notice* address in Philadelphia may indeed be critical to whether the IRS received proper notice of the bankruptcy and of the deadline for filing a claim.

on this fourth count, the IRS submits that Waggoner's failure to provide notice to the IRS of the bankruptcy case at its notice address in Philadelphia excuses its late filing. The Court is satisfied that this raises a meritorious defense to the fourth count.[5]

Regarding the three counts that are based on the innocent spouse doctrine, each count is, obviously, premised upon a determination that Waggoner is an innocent spouse as contemplated by section 6015 of the Internal Revenue Code. Waggoner's allegations concern facts that are presumably known only by her -- and perhaps her former husband. In Count 1 – Innocent Spouse Determination Under Bankr. Code § 505 and IRC § 6015(b), Waggoner says that she did not sign the tax returns in question, that her husband forged her signature to the returns, and that, as a result, she did not know that the taxes had been understated. At Count 2 – Innocent Spouse Determination Under Bankr. Code § 505 and IRC § 6015(c), Waggoner states that she has not been a member of the same household as her former husband for the past twelve months and that she had no actual knowledge of an alleged deficiency on their taxes. In Count 3 – Innocent Spouse Determination Under Bankr. Code § 505 and IRC § 6015(f), Waggoner asserts her lack of control and knowledge of her and her husband's finances and taxes and that, if found liable for the taxes, she will suffer an economic hardship.

The Court cannot fathom how, at the answer stage of this lawsuit, the IRS can contest Waggoner's factual allegations concerning the innocent spouse doctrine. As a result, it has simply denied the allegations. In addition, the IRS raises limitations, failure to exhaust administrative remedies, and waiver as defenses to defeat Waggoner's claims. These three defenses are alleged without any underlying factual allegations to support them.

---

[5]*See* note 4 above.

## **Conclusion**

The IRS's failure to timely answer the lawsuit was not willful. In addition, given the difficulty in rebutting or defending, at the answer stage, Waggoner's contention that she is an innocent spouse, the Court is satisfied that the IRS, through its denials, has sufficiently raised a meritorious defense. The question of whether the IRS received proper notice of the deadline to file a proof of claim likewise raises a meritorious defense to Waggoner's claim that the IRS's claim should be disallowed because it was late-filed. Finally, given the timeliness of the IRS's response to the default, Waggoner cannot contend that she is prejudiced by the Court setting aside the default. The Court, in the exercise of its discretion on this matter and in accordance with its bias in favor of resolving cases on the merits, will set aside the default, and the motion for default judgment will be denied.

### End of Memorandum Opinion ###